COMMONWEALTH of Pennsylvania,
Appellee

v.

Jay Michael BOYER, Jr., Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 6, 2008.
Filed Dec. 10, 2008.

Edward J. Rymsza, Williamsport, for appellant.

David P. Johnson, Assistant District Attorney, Lewisburg, for Commonwealth, appellee.

BEFORE: ORIE MELVIN, SHOGAN and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

¶ 1 This case is an appeal from the order denying Appellant's petition under the Post Conviction Relief Act ("PCRA"). Appellant claims the PCRA court erred in not finding his trial counsel ineffective in the following ways:

  (1) by not objecting when the Commonwealth introduced the guilty plea of one of Appellant's codefendants and by not requesting an instruction that the jury could not find Appellant guilty merely because of his codefendant's plea;

  (2) by not litigating the issue of a Miranda[1] violation with respect to Appellant's confession;

  (3) by not requesting an instruction that the jurors could not consider Appellant's confession as evidence unless they determined it was voluntary;

  (4) by not requesting an instruction that the jury should view Appellant's confession with caution.

¶ 2 We reverse the order of the PCRA court, vacate Appellant's conviction and judgment of sentence, and remand for further proceedings.

### Facts

¶ 3 The facts of this case were set forth at some length in our opinion at *Commonwealth v. Boyer*, 856 A.2d 149 (Pa.Super.2004), and in the Supreme Court's opinion at *Commonwealth v. Boyer*, 586 Pa. 142, 891 A.2d 1265 (2006). As such, we will not detail those facts here. In brief, however, we note Appellant and his two codefendants were charged with various offenses stemming from the burglary and robbery of two individuals in their home. One of Appellant's codefendants pled guilty. Appellant and the remaining codefendant proceeded to trial. Both were convicted.

¶ 4 Thereafter, Appellant filed a direct appeal in which he raised numerous claims, including the ineffectiveness of his trial counsel. We deferred the ineffectiveness claims to collateral review, addressed his other issues and affirmed the judgment of sentence. *Boyer*, 856 A.2d at 156. Appellant filed a petition for allowance of appeal with the Pennsylvania Supreme Court, and the court granted that petition. *Commonwealth v. Boyer*, 582 Pa. 661, 868 A.2d 450 (2005). Ultimately, however, the court denied relief. *Boyer*, 891 A.2d at 1267.

¶ 5 Appellant then timely filed the instant PCRA petition. After an evidentiary hearing, the court denied the petition. Appellant subsequently filed this appeal.

### Legal Principles

¶ 6 *Ineffectiveness of Counsel.* The PCRA provides relief for petitioners whose convictions resulted from ineffectiveness of counsel. *See* 42 Pa.C.S.A. § 9543(a)(2)(ii). To establish ineffectiveness, a petitioner must demonstrate the following: (1) the petitioner's underlying claim has arguable merit; (2) counsel had no reasonable basis for the chosen conduct; and (3) counsel's conduct prejudiced the appellant. *Commonwealth v. Sattazahn*, 952 A.2d 640, 652 (2008). Prejudice means that, absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different. *Id.* Reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Commonwealth v. Collins*, 957 A.2d 237, 244 (2008). Failure to satisfy even one prong of the ineffectiveness test causes the claim to fail. *Satta-*

---

* Retired Senior Judge assigned to the Superior Court.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*zahn,* 952 A.2d at 653. Also, to obtain relief, PCRA petitioners must prove their allegations by a preponderance of the evidence. 42 Pa.C.S.A. § 9543(a).

¶ 7 *Standard of Review.* On review of orders denying PCRA relief, our standard is to determine whether the PCRA court's ruling is free of legal error and supported by the record. *Commonwealth v. Jones,* 932 A.2d 179, 181 (Pa.Super.2007).

### Issue # 1–Ineffectiveness Re: Admission of Codefendant's Guilty Plea

■ ¶ 8 With respect to the evidence of the codefendant's guilty plea, the question as phrased in Appellant's brief is twofold. Specifically, he claims counsel was ineffective (1) for failing to object to the evidence and (2) for failing to request an instruction cautioning the jurors that they could not convict Appellant merely because the codefendant pled guilty. With respect to the first part of this claim, Appellant may be suggesting that counsel should have objected to the evidence of the plea because that evidence was simply inadmissible under any circumstances, regardless of whether there was a cautionary instruction concerning its use. To the extent that this is Appellant's position, however, he is incorrect. Consistent with the discussion in our first opinion in this case, *see Boyer,* 856 A.2d at 154–55, the plea was not *per se* inadmissible.[2]

¶ 9 Appellant also argues, however, that counsel failed to request, and should have requested, a cautionary instruction in connection with the admission of the plea. Appellant is correct that counsel failed to make such a request. Moreover, as we explained in our first opinion in this case, making such a request had arguable merit because of the risk that, without a cautionary instruction, the jury might think the codefendant's plea was itself evidence that Appellant was guilty. *See id.* at 155. Furthermore, the PCRA transcript persuades us trial counsel had no reasonable basis for failing to seek such an instruction.

¶ 10 Nevertheless, Appellant's ineffectiveness claim fails because he has not established prejudice. Specifically, in light of the admission of Appellant's confession, there is no reasonable probability that the trial outcome would have been different if a cautionary instruction had been given. *See id.* at 155.

### Issue # 2–Ineffectiveness Re: Miranda Violation

■ ¶ 11 At some point before being arrested in the present case, Appellant was jailed with respect to a separate matter. Pennsylvania State Trooper Reeves ("Trooper 1") suspected Appellant's involvement in the case *sub judice* and, as such, arranged for another prisoner, who would act as an informant, to be assigned as Appellant's cellmate. Thereafter, Appellant made one or more inculpatory statements to the informant. The infor-

---

**2.** The codefendant who pled guilty was brought to the courtroom during Appellant's trial at the Commonwealth's request, but he refused to testify, apparently because he was then attempting to withdraw his plea. Evidence of his plea was then read into the record and he was kept in the courtroom while one of the victims testified to the relative heights of the three burglars. Appellant and the codefendants were thereafter directed to stand so that the jury could compare the heights of the three men. Thus, as we stated in our first opinion, the Commonwealth introduced the codefendant's plea in the course of introducing the codefendant's size as physical evidence. In essence, then, the plea was relevant and admissible because it helped the jurors understand why it made sense for them to consider this particular individual's height with that of Appellant and the remaining codefendant. *See id.*

mant then advised Trooper 1 regarding the information obtained from Appellant.

¶ 12 Appellant was later arrested on the instant matter and was taken to a state police barracks for questioning by Trooper 1. Trooper 1 gave Appellant his *Miranda* warnings, and Appellant stated, "I don't want to talk to you." N.T., 06/20/02 at 23. Trooper 1 then ended the interview and left Appellant alone. At that time, State Trooper Watson ("Trooper 2") had just arrived at work. He asked Trooper 1 if he could "take a shot at interviewing [Appellant]." N.T., 06/20/02, at 27. Trooper 2 then questioned Appellant without administering *Miranda* warnings. During that questioning, Appellant confessed to the charges for which he was eventually tried and convicted.

¶ 13 Before trial, Appellant's counsel filed a motion seeking to suppress his statements to the informant and to Trooper 2. In that motion, Appellant complained his statements to the informant were obtained in violation of his constitutional rights, particularly his right to counsel. Appellant further alleged that Trooper 2 interviewed him, thereby obtaining statements from him, as a result of the constitutionally infirm statements police received from the informant. After an evidentiary hearing, the court denied the motion, finding Appellant had no right to counsel when he spoke to the informant.

¶ 14 In his PCRA petition, and on this appeal, Appellant contends his counsel was ineffective in failing to advance a *Miranda* theory to suppress his confession to Trooper 2. More specifically, Appellant maintains counsel should have argued it was a *Miranda* violation for Trooper 2 to interrogate him and thereby obtain the confession.

¶ 15 The PCRA court found Appellant's aforesaid statement to Trooper 1 (*i.e.,* "I don't want to talk to you") was not an invocation of the right to remain silent but, rather, a declaration that Appellant would not talk specifically to Trooper 1 because of Appellant's animosity toward him. Having found Appellant did not invoke his *Miranda* rights, the court reasoned there was no merit to the *Miranda* theory—that is, the theory that Trooper 2 should have administered *Miranda* rights and that Appellant's confession was obtained in violation of those rights. Finding no merit to the *Miranda* theory, the court determined there was no arguable merit to the claim that counsel should have pursued that theory. As such, the court concluded counsel could not be found ineffective.

¶ 16 *Arguable Merit.* A suspect is entitled to *Miranda* warnings prior to a custodial interrogation. *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 842 n. 12 (2003). Here, there is no dispute that Appellant was in custody before being questioned by both troopers. Also, there is no issue as to whether Trooper 1 accurately recited Appellant's *Miranda* rights. Rather, the question is whether the questioning by Trooper 2 after Appellant refused to talk with Trooper 1 violated Appellant's *Miranda* rights and whether counsel should have therefore sought suppression under *Miranda.*

¶ 17 The case of *Commonwealth v. Russell,* 938 A.2d 1082 (Pa.Super.2007), provides guidance on this question. In *Russell,* a detective administered *Miranda* rights to the defendant before attempting a custodial interrogation. The defendant stated that she was angry at the detective and was not going to talk to him. The detective then ended the interview. Approximately two hours later, the detective asked the defendant whether she had changed her mind and wanted to speak with him. He then had a different detective talk with her. The second detective advised the defendant of her *Miranda* rights and, initially, spoke to her about

general background information. Only after she agreed to talk with him about the crime under investigation did he question her about that subject. Thereafter, she made incriminating statements.

¶ 18 On appeal, the defendant claimed the police had violated her *Miranda* rights. When considering her claim, we set forth the pertinent law as follows:

> Subsequent police questioning after the invocation of a defendant's right to remain silent is not a *per se* violation of that right. Rather, the police may attempt to question a defendant a second time after the defendant's initial invocation of [the] right to remain silent in order to determine if the defendant wishes to speak further to the police voluntarily, where the police "scrupulously honor" the defendant's initial invocation of the right to remain silent. The question of whether the police have "scrupulously honored" the defendant's right to remain silent focuses on the following considerations: (1) whether the defendant was advised of [the] *Miranda* rights before both interrogations; (2) whether the officer conducting the first interrogation immediately ceased the questioning when the defendant expressed [the] desire to remain silent; and (3) whether the second interrogation occurred after a significant time lapse, and whether it was conducted in another location by another officer.

*Russell,* 938 A.2d at 1090–91.

¶ 19 We then applied the aforesaid principles to the facts in *Russell* and found the police had not violated the defendant's rights. We observed that the first detective had ceased his interrogation immediately when the defendant indicated she did not want to speak to him. Also, the record showed the defendant's refusal to speak was qualified in that she had some animosity toward the first detective, thus making him in particular the one to whom she did

not want to speak. Moreover, we were convinced the police approached the defendant immediately before the second interview not to entice her into abandoning her right to remain silent but, rather, to determine whether she had changed her mind about talking. In this vein, we observed the second detective approached the defendant in a neutral manner, asking questions about the crime only after she agreed to speak to him on that issue. Also, the defendant received her *Miranda* warnings from both detectives. Additionally, although the second interview did not take place in a location different than the first (that is, in order to reduce any lingering coercive effect from the first interview), that second interview took place some two hours after the first detective talked with the defendant. In sum, we were satisfied the detectives had not violated the defendant's *Miranda* rights. *Russell,* 938 A.2d at 1090–91. Accordingly, the defendant's claim failed.

¶ 20 In the present case, it is true that the first interview ceased immediately when Appellant indicated he did not want to speak to Trooper 1. Additionally, the second interview was indeed conducted by a different trooper. Pursuant to *Russell,* these facts tend to militate in favor of finding that Appellant waived his rights by speaking with Trooper 2.

¶ 21 However, unlike *Russell,* there was no significant lapse of time, no reasonable period for reflection during which Appellant might have changed his mind. Also the record does not indicate that Trooper 2 approached Appellant in some neutral fashion, asking if he had decided to speak, questioning him only when he agreed to discuss the case. Moreover, again unlike *Russell,* Trooper 2 simply did not administer a second set of *Miranda* warnings. Rather, the suppression transcript indicates that, almost immediately after Appel-

lant invoked his right not to speak with Trooper 1 and Trooper 1 left the room, Trooper 2 entered that same room and engaged Appellant in the interview that Trooper 1 had failed to obtain. It appears that Trooper 2's purpose was to interrogate Appellant and he did so without advising Appellant of his rights, even though Appellant had exercised those rights just moments earlier.

¶ 22 Based on the record before us, we reject the PCRA court's notion that Appellant's refusal to speak with Trooper 1 was not an invocation of his right to remain silent or was somehow qualified to the extent that Trooper 2 need not have read Appellant his rights. The simple fact is that Appellant was initially told he could refuse to speak and that is what he chose to do. There is no record evidence, for example, that he told Trooper 1 he would be willing to speak if another trooper conducted the interview. In sum, whatever Appellant's subjective reasons, he exercised his rights and, almost immediately thereafter, was interrogated by Trooper 2.

¶ 23 Pursuant to the pertinent legal principles set forth *supra*, we find the record establishes by a preponderance of the evidence that there is arguable merit to the claim that the police conduct violated Appellant's *Miranda* rights, and that Appellant's confession to Trooper 2 were therefore obtained in violation thereof. Accordingly, there is arguable merit to the claim that trial counsel should have pursued the *Miranda* theory for suppressing Appellant's aforesaid confession. Thus, the first prong of the ineffectiveness test is satisfied.

¶ 24 *Reasonable Basis.* During the PCRA hearing, trial counsel testified he had no reasonable basis for not litigating a *Miranda* theory. As such, Appellant has satisfied the second ineffectiveness prong.

¶ 25 *Prejudice.* A confession is likely the most damaging evidence that can be offered against a defendant. *Commonwealth v. Ardestani*, 558 Pa. 191, 736 A.2d 552, 557 (1999). More particularly, with respect to the instant matter, we agree with the trial court that Appellant's confession was the most powerful Commonwealth evidence admitted. In this vein, it is worth noting that the victims could not identify the burglars because the latter wore masks.

¶ 26 There is an additional observation we must make. As we indicated *supra*, the admission of Appellant's confession is what led us to find that no prejudice resulted when trial counsel failed to request a cautionary instruction concerning the jury's use of the codefendant's guilty plea. However, we have now determined there is arguable merit to the claim that the confession should have been suppressed under *Miranda*. Had counsel sought and obtained suppression pursuant to *Miranda*, then we would not be able to say there was no prejudice at trial from counsel's failure to request a cautionary instruction regarding the codefendant's plea.

¶ 27 The foregoing considerations surely undermine confidence in the outcome of Appellant's trial. Put another way, our considerations lead us to conclude that, absent the confession, there is a reasonable probability the outcome of the trial would have been different. Therefore, we find counsel's failure to pursue the arguably meritorious *Miranda* theory constituted ineffectiveness, and the PCRA court erred in finding otherwise. As such, we reverse the PCRA court's order, vacate Appellant's conviction and judgment of sentence, and remand for further proceedings.

¶ 28 Before leaving this issue, however, there is a point we must clarify. What we have determined is that the PCRA, specifically 42 Pa.C.S.A. § 9543(a)(2)(ii), entitles Appellant to a new trial because he has shown by a preponderance of the evidence

that his conviction resulted from the ineffectiveness of his counsel. The particular ineffectiveness of which we speak is counsel's failure in not litigating the *Miranda* theory of suppression. In reaching the determination of ineffectiveness, we necessarily determined, *inter alia*, that Appellant has shown there is arguable merit to the *Miranda* theory. However, our determination that there is arguable merit to the claim that the confession could have been suppressed pursuant to *Miranda* if counsel had raised *Miranda* is not a determination that the *Miranda* theory must necessarily prevail if presented and litigated by Appellant's counsel in an actual suppression hearing upon remand. Therefore, we are not ordering the suppression of Appellant's confession.

¶ 29 Phrased differently, the parties did not litigate the *Miranda* issue in the suppression court. Thus, for example, the Commonwealth cannot be said to have had a full opportunity to present evidence to the suppression court on the *Miranda* theory. It is true that the original suppression hearing did reveal facts that happened to relate to *Miranda*. Indeed, Appellant has relied on those facts and we have found them sufficient to convince us by a preponderance that there is at least arguable merit to the claim that the confession should have been suppressed under a *Miranda* theory. However, whether there might be new or additional facts elicited at a suppression hearing when *Miranda* is actually raised, we do not know. Thus, whether the *Miranda* theory will ultimately prevail, if and when it is litigated fully via a suppression motion and hearing on remand, we also cannot know.

¶ 30 Consequently, our ruling today is not to be taken as a pronouncement that there necessarily was a *Miranda* violation and that the confession must necessarily be suppressed pursuant to *Miranda*. We do, however, find Appellant has convinced us that there is arguable merit to a *Miranda* claim based on the testimony as it now stands and that counsel was ineffective. Appellant is free to seek suppression of his confession pursuant to *Miranda* on remand.

### Issues ## 3 and 4–Ineffectiveness Re: Confession and Cautionary Instructions

¶ 31 In his remaining two issues, Appellant asks us to find counsel ineffective for not requesting various cautionary instructions concerning the admission of his confession. Because we have granted Appellant relief and remanded this case, there is no need to address these claims.

¶ 32 Some may think it profitable for us to determine what cautionary instructions should have been given so that we may provide guidance for the trial court on remand. Such thinking would be incorrect. Because of our ruling today, there is the possibility that the confession may be suppressed before the retrial. Moreover, even if the confession is somehow admitted, the determination of what cautionary instructions should be given will depend, in part, on what other evidence relating to the confession is introduced. *See Commonwealth v. Gibson*, 951 A.2d 1110, 1142 (Pa.2008). There is no guarantee that, even if the confession is again admitted in the same fashion, the other evidence in the case will be the same as in the first trial. Thus, we simply do not now know what evidence concerning the confession will be admitted on retrial. Accordingly, we cannot say what cautionary instructions will be appropriate. Therefore, to venture into an analysis of the propriety of the instructions relating to the confession would be inappropriate.

¶ 33 Based on the foregoing discussion, we reverse the PCRA court's order, vacate Appellant's conviction and judgment of sentence, and remand for further proceedings.

¶ 34 Order denying PCRA relief reversed. Conviction and judgment of sentence vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.